IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 06-cv-01048-WDM-CBS

KALIE McARTHUR, a mentally disabled person, by and through her parents and legal guardians, JAMES McARTHUR and CINDY STARR

    Plaintiff,

v.

ACADEMY SCHOOL DISTRICT TWENTY, et al.,

    Defendants.

## ORDER ON MOTION TO DISMISS

Miller, J.

This matter is before me on Defendants' Motion to Dismiss Complaint (doc no 17). Plaintiff opposes the motion. After a review of the pleadings and the parties' written arguments, I conclude oral argument is not required. For the reasons that follow, the Motion to Dismiss is denied.

### Background

According to the Complaint, Plaintiff is a mentally disabled person, who was enrolled in September 2004 as a student at Rampart High School in El Paso County, Colorado. Complaint at ¶ 1. At that time, she was 18 years old, but functioned at the level of approximately a 3 or 4 year old and was in special education classes. *Id.* at ¶¶ 11, 14. She was exceedingly loving and trusting with few personal boundaries and, therefore, very vulnerable to abuse. *Id.* at ¶ 11. Because of her mental disabilities and certain health conditions, she was required to be under adult supervision at all times and school officials

knew this. *Id.* at ¶¶ 12-17. Notwithstanding this knowledge, the school assigned a student "field trainer" to Plaintiff, as it did with other special education students. *Id.* at ¶ 19. The field trainer was directed to spend one-on-one time with Plaintiff, escort her around the school campus, supervise her, and was allowed to be with her in settings without adult supervision. *Id.* at ¶ 20. The field trainers were not screened or trained by the district prior to being assigned to work with special education students. *Id.* at ¶ 21. The field trainer assigned to work with Plaintiff was a fifteen year old male, with a previous arrest for shoplifting, who had been disciplined at school on several occasions for fighting and staff disrespect (including 20 suspensions) and who had failed out of nearly all of his classes the previous year at school. *Id.* at ¶¶ 20, 22. On September 14, 2004, while he was alone with Plaintiff, Plaintiff's field trainer sexually assaulted Plaintiff. *Id.* at ¶¶ 23-24. After the incident, Plaintiff made statements in therapy that indicated she had previously been sexually abused at the school. *Id.* at ¶ 29.

Plaintiff asserts two claims for violation of her constitutional substantive due process rights pursuant to 42 U.S.C. § 1983.[1]

Standard of Review

A motion to dismiss is appropriate when it appears beyond doubt that the plaintiff could prove no set of facts entitling it to relief. The court must accept as true all well-pleaded facts and construe all reasonable allegations in the light most favorable to the

---

[1] A separate incident involving Defendant Lori Wright formed the basis of Plaintiff's second claim. I take notice that Ms. Wright has been dismissed from the case, and, therefore, I do not address this claim. I note also that Gil Bierman has been dismissed as a defendant.

plaintiff.  *United States v. Colorado Supreme Court*, 87 F.3d 1161, 1164 (10th Cir. 1996).

## Discussion

Defendants argue that Plaintiff's claim should be dismissed because the field trainer, the person that caused the harm to Plaintiff, is not a state actor and Plaintiff has failed to allege facts sufficient to establish a claim based on a creation of danger theory. I disagree.

The only proper defendants in a section 1983 claim are those who "'represent [the state] in some capacity, whether they act in accordance with their authority or misuse it.'" *National Collegiate Athletic Ass'n v. Tarkanian*, 488 U.S. 179, 191 (1988) (quoting *Monroe v. Pape*, 365 U.S. 167, 172 (1961)). However, state actors may be liable for the acts of private third parties under two doctrines: the special relationship doctrine and the "danger creation" theory, which arises when the state creates the danger that harmed the individual. *Liebson v. New Mexico Corrections Dep't*, 73 F.3d 274, 276 (10th Cir. 1996).[2]

Plaintiff does not allege the existence of a special relationship, so my analysis is limited to the danger creation exception to the state actor doctrine. In the Tenth Circuit, a plaintiff states a claim under this theory if the following elements are established: (1) plaintiff was a member of a limited and specifically definable group; (2) defendants' conduct put plaintiff at substantial risk of serious, immediate and proximate harm; (3) defendants created the danger or increased plaintiff's vulnerability to the danger; (4) the risk was obvious or known; (5) defendants acted recklessly in conscious disregard of that

---

[2]In addition, although not pleaded in the complaint, I question whether the field trainer was a purely private actor in this regard, since, if the allegations are true, the school apparently delegated its supervisory responsibility to him.

risk; and (6) such conduct, when viewed in total, is conscience shocking. *Armijo v. Wagon Mound Public Sch.*, 159 F.3d 1253, 1262-63 (10th Cir. 1998). "The key to the state-created danger cases . . . lies in the state actors' culpable conduct in affirmatively placing an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid." *Id.* at 1263 (quoting *Johnson v. Dallas Ind. Sch. Dist.*, 38 F.3d 198, 201 (5th Cir. 1994)).

Defendants analogize this case to school shooting cases and argue that Plaintiff cannot demonstrate that the alleged risk was immediate or proximate, that the risk was known or obvious, that defendants were reckless, or that the conduct shocks the conscience. I disagree. The facts in this case are distinguishable from *Castaldo v. Stone*, 192 F. Supp. 2d 1124 (D. Colo. 2001) and other such cases. There, the plaintiffs suffered harm from other students, but the only alleged wrongdoing of school officials was that they failed to detect the potential for harm and prevent it. Here, by contrast, school officials affirmatively placed a severely disabled young woman who required constant adult supervision in the *unsupervised* care and custody of a fifteen year old male student who had a history demonstrating a serious lack of judgment and impulse control. Since I must construe all facts in the light most favorable to Plaintiff, I conclude that Plaintiffs have alleged facts sufficient to demonstrate that the risk of harm was proximate, obvious, and recklessly disregarded by school officials in a manner that could be found to shock the conscience.

Defendants argue that Plaintiff cannot demonstrate that Defendants' actions placed her at risk of "serious, immediate, and proximate" harm, and that undefined "potential" for

harm is insufficient. I disagree. It is not clear from the allegations how soon after the field trainer was assigned to Plaintiff that he assaulted her but I am permitted to infer that the interval was not lengthy. Moreover, this case can be analogized to child custody cases such as *Currian v. Doran*, 242 F.3d 905 (10th Cir. 2001), where state actors place children with a parent or other guardian despite knowledge of facts indicating that the children are at substantial risk of harm from that parent. The fact that the ultimate harm occurs after a certain period of time, nearly six months in the *Currian* case, does not mean that the harm was not proximately caused by the defendant's actions. 242 F.3d at 920 (state social worker who knew of father's history of financial irresponsibility but failed to investigate and recommended placement of children with father put children at obvious risk of serious, immediate, and proximate harm).

Defendants also argue that the facts do not demonstrate a conscious disregard of a known or obvious risk because the school officials did no more than depart from their policy of adult supervision of Plaintiff and could not have known she would be sexually assaulted by the field trainer. I disagree. Plaintiff's individualized educational plan and other documents demonstrating the need for adult supervision set forth clear facts regarding the need for this supervision, including her inability to differentiate between persons with whom she should talk and not, her lack of understanding of personal space, safety concerns, and her affectionate nature. These facts demonstrate that Plaintiff was at risk of exploitation, including sexually, if not properly supervised, and that Defendants recklessly disregarded this risk but placing her with an untrained, unscreened, unsupervised fifteen year old boy with a history of behavior problems. Accordingly, this

element has been met.

While the issue of whether this conduct was conscience-shocking is a close one, I consider persuasive the Tenth Circuit's decision in *Sutton v. Utah State Sch. for the Deaf and Blind*, 173 F.3d 1226 (10th Cir. 1999). In *Sutton,* the plaintiff was a severely disabled boy who was molested by another student. The court permitted his claim to go forward on the theory that the school principal had failed to adequately train school employees or adopt or implement a policy to prevent assaults like the one that had happened to the plaintiff, despite knowledge of a previous assault. Here, in light of the allegations that Plaintiff may have been previously assaulted, the obviousness of the risk of leaving her unsupervised in disregard of clear instructions to keep her under adult supervision at all times, her vulnerability to abuse due to her trusting and loving nature and poor boundaries, and the district's alleged failure to screen and train field trainers, it appears possible that Plaintiff can prove facts demonstrating that the conduct shocks the conscience.

Defendants further assert that vicarious liability cannot be imposed on the district based on the actions of the individual defendants because Plaintiffs have not alleged that a policy or custom of the district was the "moving force" behind Plaintiff's injury and there was no clear and persistent pattern of sexual abuse. *Myers v. Okla. County Board of County Comm'rs*, 151 F.3d 1313, 1317 (10th Cir. 1998); *Doe v. Claiborne County*, 103 F.3d 495 (6th Cir. 1996). Plaintiff's theory of liability for the district is that it failed to supervise and train the field trainer.

A municipality or district will not be held liable under § 1983 solely because its employees inflicted injury. *Monell v. Dep't of Social Servs. of the City of New York*, 436

U.S. 658, 694, (1978).  Rather, to establish municipal or district liability, a plaintiff must show: 1) the existence of a policy or custom and 2) a direct causal link between the policy or custom and the injury alleged.  *City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).  When the claim is a failure to act, the plaintiff must demonstrate the municipality's inaction was the result of " 'deliberate indifference' to the rights of its inhabitants." *Id.* at 389.

I disagree with Defendants that Plaintiff is required to show a pattern of previous assaults in order to establish liability.  As noted by the Tenth Circuit in *Carr v. Castle*, 337 F.3d 1221 (10th Cir. 2003),

> The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm. In most instances, notice can be established by proving the existence of a pattern of tortious conduct. In a narrow range of circumstances, however, deliberate indifference may be found absent a pattern of unconstitutional behavior if a violation of federal rights is a highly predictable or plainly obvious consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations.

*Id.* at 1229.

Plaintiff has alleged that the "field trainer" program was an official program established by the district.  Since this involved a recurring situation whereby disabled children and juveniles, including some severely disabled individuals, could be put in the exclusive care of other minors, I conclude that the district's failure to provide proper training and supervision falls into the "narrow range" of circumstances where the possibility

of a constitutional violation may well be highly predictable or plainly obvious. This again distinguishes this case from the school shooting cases because the student who caused the harm here was given the opportunity to do so by the affirmative acts of the Defendants pursuant to a program created by the district. Again, construing the allegations in the light most favorable to Plaintiff, the facts as alleged could demonstrate that the district's policies and failure to properly train and supervise the field trainer program could establish liability under section 1983.

In the alternative, Defendants argue that they are entitled to qualified immunity. "In civil rights actions seeking damages from governmental officials, those officials may raise the affirmative defense of qualified immunity, which protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001). When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to "first establish that the defendant's actions violated a constitutional or statutory right." *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2001). If so, the issue is whether the right was "clearly established at the time of defendant's unlawful conduct." *Id*. Defendants argue that there is no controlling case law that would give the individual defendants fair notice that their conduct was unlawful. In response, Plaintiff argues that the field trainer acted in the capacity of an employee and there is plentiful case law establishing that a sexual assault committed by a school employee would subject the district to liability.

Even without determining that the field trainer could be considered a state actor, I conclude that cases such as *Wagon Mound*, *Currier,* and *Sutton* are sufficient to

demonstrate that Plaintiff's right to be free from a danger created or enhanced by school officials, even if perpetrated by another student, was clearly established at the time of the alleged sexual assault.

Accordingly, it is ordered:

1. Defendants' Motion to Dismiss Complaint (doc no 17) is denied.

DATED at Denver, Colorado, on March 22, 2007.

BY THE COURT:


s/ Walker D. Miller
United States District Judge